IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVIN REYES SARTIAGUDA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-CV-2280-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 7, 8, and 20), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' brief on the merits (Docs. 12, 18, and 22).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

# II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 25, 2013. See CAR 24.[1] In the application, plaintiff claims disability began on January 16, 2012. See id. In his opening brief, plaintiff alleges disability is the result of the following:

> Sartiaguda suffered an acute to subacute ischemic infarct with hemorrhagic conversion in the right occipital lobe and smaller strokes in the right and left thalamus, left occipital and parietal lobes in January 2012. AR 604 and 418. During the hospitalization, Sartiaguda underwent a psychiatric consultation. AR 610. The consultation noted a psychiatric history of major depressive disorder and intermittent explosive disorder. AR 611.

Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on April 20, 2016, before Administrative Law Judge (ALJ) Suzanne Krolikowski. In a September 29, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): history of stroke with residual effects on the left side of body; organic brain syndrome; left field of vision issues; affective disorder; and intermittent explosive disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work; the claimant cannot push or pull with the left, non-dominant upper extremity; cannot overhead reach and occasionally reach in other directions with the left, non-dominant upper extremity; can frequently stoop, kneel, crouch, and climb ramps and stairs; occasionally balance and crawl; cannot climb ropes, ladders, or scaffolds; can only stand and/or walk for 4 hours in an 8-hour workday; would need an option to alternate to sitting for 30 to 60 minutes after 30 to 60 minutes of standing; can frequently handle and finger with left, non-dominant upper extremity; can engage in no work requiring the full field of vision, as he has a limited field of vision on the left side; can have no exposure to high, exposed places or moving mechanical parts; can understand, remember, and carry out simple work-related decisions; can tolerate occasional interaction with coworkers and supervisors, but can engage in no tandem work and have no public interaction; can only perform work with occasional oral communication; would need a brief re-

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on March 19, 2018 (Doc. 10).

4

explanation for changes in work duties; and cannot have frequent job changes;

    4.    Considering the claimant's age, education, work experience, residual functional capacity, [and vocational expert testimony][and the Medical-Vocational Guidelines], there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR 26-39.

After the Appeals Council declined review on September 20, 2017, this appeal followed.

## III. DISCUSSION

In his opening brief, plaintiff argues: (1) the ALJ improperly rejected the opinions of state agency physicians, Drs. Duffy and Schumacher, regarding plaintiff's mental limitations; and (2) the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).[2]

### A. Medical Opinions

    1.    The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinions to determine plaintiff's residual functional capacity. See CAR 36-38. Regarding plaintiff's mental limitations, the ALJ gave significant weight to the opinions of Drs. Duffy and Schumacher, the state agency consultative physicians, and partial weight to the state agency psychological consultative examiner.[3] See id. at 36-37. With respect to the opinions expressed by Drs. Duffy and Schumacher, the ALJ stated:

> As for the opinion evidence, significant weight is assigned to the opinions provided by the State agency psychological consultants, who opined that the claimant had identical "B" criteria to that above, could understand and remember 1 to 2-step tasks for up to 2 hour intervals during the workday, could engage in routine contact with coworkers and employers in a setting where major collaboration is not involved, and changed in work duties would need to be briefly re-explained to him. (Ex 1A/11-13, Ex 3A/1-16). These doctors provided a good explanation of their opinion, and it is generally consistent with the limited mental findings contained within the

---

    [2] Plaintiff raises no claims of error with respect to the ALJ's evaluation of the medical opinions as to plaintiff's physical residual functional capacity or the ALJ's adverse credibility finding. These issues, therefore, are not before the court.

    [3] Plaintiff does not challenge the ALJ's analysis with respect to the psychological consultative examiner.

5

record, specifically those of the consultative examiner and the mental status examination suggesting that the claimant is not in fact significantly limited, as discussed above. (Ex 1F, Ex 2F, Ex 3F, Ex 5F, Ex 6F). The record also supports limiting the claimant to no public contact or tandem work, as it is consistent with the record, which indicates intermittent explosive disorder. Furthermore, the need for re-explanation was incorporated into the residual functional capacity above, as it is supported by this opinion and the findings of the consultative examiner. (Ex 2F). Moreover, as consultants, these doctors are well versed in Social Security program knowledge, meaning they are aware of the requirements in assigning limitations. Finally, while additional evidence was submitted at the hearing level, this additional evidence did not show that the claimant's condition significantly deteriorated. As such, significant weight is appropriate.

CAR 36.

2. Plaintiff's Contentions

Plaintiff summarizes the opinions of Drs. Duffy and Schumacher as follows:

> Timothy Schumacher, Ph.D., reviewed the medical records for the initial determination with respect to the mental requirements of work. Dr. Schumacher opined and found that Sartiaguda had residuals limiting his ability to comprehend and retain lengthy-complex 3 to 4 step job instructions; he could understand and remember shorter-simpler 1 to 2 tasks directions; could sustain work duties for two hour intervals during a regular workday or workweek; stress from close interactions with the public, peers, and critical supervision would aggravate his temper control but that Sartiaguda could engage in routine contact with coworkers and employers in settings were major collaboration with others was not involved; and could tolerate changes in work duties where they were brief and re-explained. AR 119-21. Jennifer Duffy, Ph.D., conducted the review on reconsideration and agreed. AR 138-40.

Plaintiff argues:

> The ALJ found that Sartiaguda had a combination of physical and mental impairments. AR 26, ¶ 3. The ALJ assessed Sartiaguda as retaining the residual functional capacity to perform a limited range of light work with a further limitation to simple instructions and work-related decisions. AR 30, ¶ 5. Dr. Schumacher and Dr. Duffy explain that Sartiaguda had residuals of the stroke limiting his ability to comprehend and retain lengthy or complex three to four step job instructions but that he could understand and remember shorter, simpler one to two step tasks directions. AR 119, 120, 138, and 139. A finding of a State agency physician as part of an initial or reconsideration determination constitute findings of fact representing a residual functional capacity assessment of the most that Sartiaguda could perform. 20 C.F.R. § 404.1545(a).
> At the time of the ALJ decision, the ALJ was obligated to state the weight given to all medical opinion evidence. 20 C.F.R. § 404.1527(e) (2016). The Commissioner amended her regulations without comment about impact on cases already decided by an ALJ with the requirement that the agency evaluate every medical opinion received. 20 C.F.R. §

6

404.1527(c) (2017); see also Social Security Ruling 96-6p (rescinded as to claims filed after March 27, 2017). Dr. Schumacher and Dr. Duffy did not describe Sartiaguda as capable of simple work; they found him capable of one and two-step instructions. A limitation to generic work eliminates work activity requiring reasoning level 3, or at least has an apparent conflict with such work. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). A limitation to one and two-step instructions has an apparent conflict requiring resolution for work requiring reasoning level 2. *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002–04 (9th Cir. 2015).

The occupation of toy assembler requires reasoning level 2. DICOT 731.687-034. The occupation of garment sorter requires reasoning level 2. DICOT 222.687-014. Those occupations have an apparent unresolved conflict with the limitations described by the State agency physicians. The occupation of a bakery worker, conveyor line requires reasoning level 1 and therefore requires the ability to understand, remember, and carry out simple one and two-step instructions. DICOT 524.687-022; DICOT Appendix C.

Dr. Schumacher and Dr. Duffy also found that Sartiaguda had a limitation precluding critical supervision. AR 120 and 139. The ALJ found that Sartiaguda could tolerate occasional interaction with supervisors not requiring tandem work activity. AR 30, ¶ 5. The ALJ made no provision for preclusion of critical supervision. The occupation of a bakery worker, conveyor line requires the temperament for working under specific instructions. DICOT 524.687-022. The situation to which the worker must adapt, working under specific instructions, precluding independent action or judgment in working out job problems is a core job function of the occupation of bakery worker, conveyor line. *Id.* The temperament for work found in the electronic files maintained by the Department of Labor find their definition in the *Revised Handbook for Analyzing Jobs* (Dept. of Labor 1991) (RHAJ). The vocational expert failed to explain how an individual working under specific instructions with no room for independent judgment or action in carrying out job functions or working out job problems could perform that work successfully with occasional contact with coworkers and supervisors. Social Security Ruling 96-6p. The court should reverse and credit the opinions of Dr. Schumacher and Dr. Duffy, and then remand to determine if such work exists. *Vasquez v. Astrue*, 572 F.3d 586, 594 (9th Cir. 2009) (treating the credit as true doctrine as discretionary).

3. <u>Disposition</u>

As part of an overall agency disability determination, Dr. Schumacher rendered opinions regarding plaintiff's mental limitations in a report dated April 18, 2015. <u>See</u> CAR 119-121 (Exhibit 1A). Regarding understanding and memory, Dr. Schumacher opined plaintiff ". . .can understand and remember shorter-simpler 1 to 2 step task directions." <u>Id.</u> at 119. Regarding concentration and persistence, the doctor stated: "He can complete routine 1 to 2 step work duties for up to 2 hr intervals during regular workday and workweek." <u>Id.</u> at 120. Dr.

///

Schumacher also rendered an opinion as to plaintiff's social interaction capacity, stating:

> Stress from close interactions with the general public and with [sic] peers as well as from critical supervision aggravates his temper control. He can engage in routine contacts with coworkers and employers in settings where major collaboration with others is not involved."

Id.

Dr. Duffy expressed identical findings and opinions in a report dated October 3, 2014. See id. at 138-140 (Exhibit 3A).

In the context of plaintiff's contentions relating to conflicts between the vocational expert's testimony and the DOT, plaintiff argues the ALJ erred by implicitly rejecting two opinions expressed by Drs. Duffy and Schumacher.[4] According to plaintiff: "Dr. Schumacher and Dr. Duffy did not describe Sartiaguda as capable of simple work; they found him capable of one and two-step instructions." Plaintiff also contends:

> . . .Dr. Schumacher and Dr. Duffy also found that Sartiaguda had a limitation precluding critical supervision. AR 120 and 139. The ALJ found that Sartiaguda could tolerate occasional interaction with supervisors not requiring tandem work activity. AR 30, ¶ 5. The ALJ made no provision for preclusion of critical supervision. . . .

At the outset, the court does not agree with plaintiff's suggestion the ALJ made the specific finding plaintiff is capable of "simple work" because the ALJ made no such finding. Instead, the ALJ determined plaintiff can "remember, understand, and carry out <u>simple</u> instructions and make <u>simple</u> work-related decisions." CAR 30 (emphasis added). In any event, plaintiff's argument the ALJ implicitly rejected the doctors' opinion plaintiff is capable of "one and two-step instructions" is unpersuasive. As noted above, Drs. Duffy and Schumacher agreed plaintiff ". . .can understand and remember shorter-simpler 1 to 2 step task directions" and ". . .

---

[4] According to plaintiff, the errors at Step 4 regarding the mental limitations opined by Drs. Duffy and Schumacher infected the ALJ's vocational analysis at Step 5 because the ALJ failed to include these limitations in hypothetical questions posed to the vocational expert or explain apparent conflicts between the vocational expert's testimony and the DOT suggested by these limitations. To the extent the court agrees with plaintiff's arguments as to Drs. Duffy and Schumacher, the court declines to consider plaintiff's vocational argument for two reasons. First, any further consideration of plaintiff's vocational argument would require the court to speculate on non-existent vocational expert testimony as to the impact of previously unconsidered limitations expressed by Drs. Duffy and Schumacher. Second, further consideration of plaintiff's vocational argument would require the court to substitute its own judgement for the Commissioners regarding such evidence in light of the record as a whole.

8

can complete routine 1 to 2 step work duties. . . ." CAR 119, 120, 138-140. Plaintiff has not explained how these opinions are inconsistent with the ALJ's findings plaintiff can remember, understand, and carry out simple instructions as well as make simple decisions

Plaintiff's argument the ALJ failed to account for "preclusion of critical supervision" is unpersuasive because the doctors rendered no such opinion. While the doctors noted plaintiff's "[s]tress from . . . from critical supervision aggravates his temper control," the doctors nonetheless opined plaintiff ". . .can engage in routine contacts with. . . employers in settings where major collaboration with others is not involved." CAR 120. Drs. Duffy and Schumacher opined plaintiff could engage with supervisors (employers). They did not opine plaintiff is precluded from all critical supervision.

      **B.**      <u>**Conflicts Between Vocational Expert Testimony and DOT**</u>

            1.      <u>The ALJ's Analysis</u>

At Step 5, the ALJ obtained testimony from a vocational expert to determine plaintiff can perform other jobs existing in significant numbers in the national economy. See CAR 38-39. The ALJ stated:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist on the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as toy assembler (DOT: 731.687-034, SVP: 2, light exertion), of which there are 260,600 positions within the national economy; garment sorter (DOT: 222.687-074, SVP: 2, light), of which there are 217,500 positions within the national economy; and conveyer line worker (DOT: 524.687-022, SVP: 2, light),[5] of which there are 43,400 positions within the national economy.

CAR 39.

---

    [5] The DOT describes 524.687-022 as "Bakery Worker, Conveyor Line." In particular, the DOT indicates the job requires: "Inspecting cakes moving along conveyor." DOT 524.687-022 (emphasis added). The definition describes numerous specific job duties requiring interaction with a conveyor. See id. Additionally, the DOT definition indicates the job requires observation of "cakes moving under automated topping shaker and cake cutting machine. . . ." Id.

The ALJ specifically commented on conflicts between the vocational expert's testimony and the DOT:

> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles (DOT), there is a reasonable explanation for the discrepancy. The DOT does not contemplate overhead reaching or sit-stand options. However, [the] vocational expert testified that the claimant is capable of performing the above-stated positions with those limitation[s] based on his experience working with employers, performing job analyses, and placing individual[s] into jobs.

Id.

2. Plaintiff's Contentions

Plaintiff argues:

> The ALJ found that Sartiaguda had a combination of physical and mental impairments. AR 26, ¶ 3. The ALJ assessed Sartiaguda as retaining the residual functional capacity to perform a limited range of light work with a sit-stand option every 30 to 60 minutes; occasional reaching with the left non-dominant upper extremity; and no exposure to moving mechanical parts. AR 30, ¶ 5. The ALJ relied upon vocational expert testimony to sustain the Commissioner's burden of proof, identifying occupations for an individual of Sartiaguda's age, education, work experience, and residual functional capacity of toy assembler (DOT 731.687-034); garment sorter (DOT 222.687-014) and bakery worker conveyor line (DOT 524.687-022). AR 101 and 103.
> 
> The Commissioner takes administrative notice of the *Dictionary of Occupational Titles* (DOT). 20 C.F.R. § 404.1566(d)(1). The Commissioner construes her regulation to require the ALJ to resolve apparent conflicts between the DOT and its companion publication, *Selected Characteristics of Occupations* (SCO) by some reasonable basis. Social Security Ruling 00-4p. The court defers to the Commissioner's interpretation of her own regulation. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).
> 
> The SCO describes the occupation of bakery worker, conveyor line as requiring occasional exposure to moving mechanical parts as a hazard. DICOT 524.687-022. The SCO defines proximity to moving mechanical parts as exposure to possible bodily injury from moving mechanical parts of equipment, tools, or machinery. SCO Appendix D, ¶ 8. The DOT itself describes bakery worker, conveyor line as performing a combination of duties in preparation of cakes along a conveyor line, including moving cakes, repositioning cakes, removing defective cakes, ensuring proper positioning for toppings and cutting. *Id.* The hypothetical question posed to the vocational expert directed the assumption of no exposure to moving mechanical parts. AR 100. The vocational expert did not self-identify the apparent conflict between the hypothetical question and the description in the SCO of the occupation requiring occasional exposure to moving mechanical parts as a hazard. The ALJ did not verify the representation of the vocational expert of consistency with the DOT/SCO. The ALJ erred. *Massachi v. Astrue*, 486 F.3d 1149, 1152-1153 (9th Cir. 2007).

The occupation of toy assembler requires frequent reaching. DICOT 731.687-034. The occupation of a garment sorter requires frequent reaching. DICOT 222.687-014. The SCO defines reaching as "extending hand(s) and arm(s) in any direction." SCO Appendix C, ¶ 8. The Commissioner agrees with that definition. Social Security Ruling 85-15. The ALJ inquired of the vocational expert about consistency with the DOT, presumably including the SCO. AR 104.

    A    Yes, Your Honor.
…
    A    I - - except for the reaching requirements.
    Q    Okay. And the overhead reach you mean?
    A    yeah, it doesn't state that in the DOT.

AR 104.

The vocational expert did not identify the conflict in reaching occasionally with the non-dominant arm as apparent. The court can rely upon common experience in assessing that some occupations do not require overhead reaching. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (observing how uncommon it is for most cashiers to reach overhead). It is not readily apparent based upon common experience that toy assemblers and garment sorters do not reach frequently with both hands/arms. Garment sorters sort garments according to lot and size recorded on tags and labels. DICOT 222.687-014. The description does not intimate one-handed work a third of the day. Toy assemblers assemble parts of various materials to mass produce toys by selecting parts, assembling and fastening parts, and inspecting toys. DICOT 731.687-034. The narrative description does not permit the inference that the reaching required of the work is performed unilaterally a third of the day or more. The apparent conflict within the reaching required does not have a reasonable basis for resolution. The ALJ erred. The court should reverse and remand. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).

### 3. Applicable Legal Standards

Pursuant to the Commissioner's ruling regarding applicable regulations, the ALJ must "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles* (DOT), including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor," and "Explain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p. The ALJ is ". . .required to investigate and resolve any apparent conflict between the VE's [vocational expert] testimony and the DOT." Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2018). A conflict is apparent, however, only if the challenged vocational requirement is "essential, integral, or expected" for the job. Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

### 4. Disposition

Plaintiff argues the vocational expert's testimony that plaintiff can work as a conveyor line worker conflicts with the DOT with respect to exposure to moving mechanical parts. According to plaintiff, while the vocational expert was asked to assume a preclusion to exposure to moving mechanical parts, "[t]he DOT itself describes bakery worker, conveyor line as performing a combination of duties in preparation of cakes along a conveyor line, including moving cakes, repositioning cakes, removing defective cakes, ensuring proper positioning for toppings and cutting." Plaintiff contends the ALJ erred by failing to inquire into the apparent conflict between the preclusion on exposure to moving mechanical parts and the job's requirement of exposure to a conveyor line.

The court agrees. The challenged vocational requirement is "essential, integral, or expected" for the job. Gutierrez, 844 F.3d at 808. Relying on the vocational expert's testimony, the ALJ stated plaintiff could perform the job identified at DOT 524.687-022, which the ALJ described as "conveyor line worker," CAR 39, but which the DOT describes as "Bakery Worker, Conveyor Line," DOT 524.687-022. It would seem apparent to this court the ability to work in proximity to a conveyor line necessarily involves moving machinery and associated hazards because conveyor lines require moving machinery to function.

This conclusion is supported by the DOT definition. Specifically, the DOT indicates the job requires: "Inspecting cakes moving along conveyor." DOT 524.687-022 (emphasis added). The definition describes numerous specific job duties requiring interaction with a conveyor. See id. Additionally, the DOT definition indicates the job requires observation of "cakes moving under automated topping shaker and cake cutting machine. . . ." DOT 524.687-022 (emphasis added).

It is clear the ALJ did not address this apparent conflict in the hearing decision because the only conflicts discussed by the ALJ related to "overhead reaching or sit-stand options." CAR 39.

/ / /

/ / /

12

Plaintiff also argues the vocational expert's testimony, that he can work as a toy assembler or garment sorter, conflicts with the DOT with respect to reaching. In this case, the ALJ's hypothetical to the vocational expert presumed an inability to "overhead reach" with the left upper extremity and an ability to "occasionally reach in other directions with the left, non-dominant upper extremity." CAR 30. Thus, the ALJ described a person unable to frequently reach in any direction or overhead with the left upper extremity.

DOT 731.687-034 describes the job of toy assembler as involving fastening parts, using clips, glue, screws, handtools, selecting parts, using tweezers or pliers, and inspecting toys. The DOT also describes this job as potentially involving tending machines. See DOT 731.687-034. DOT 222.687-074 describes the job of garment sorter as involving sorting, folding, packaging, and ironing. Given the ALJ asked the vocational expert to presume a person incapable of frequent reach in any direction or overhead with the left upper extremity, and because the DOT descriptions for these jobs are not specific regarding whether these tasks can be performed with full use of just one upper extremity, the conflict is apparent. The ALJ further erred in failing to resolve this conflict. See Shaibi, 883 F.3d at 1109.

Because the ALJ failed to resolve apparent conflicts between the vocational expert's testimony regarding all of the three jobs identified and the definitions contained in the DOT, the matter will be remanded to allow the Commissioner to make further vocational findings at Step 5.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is granted;

2. Defendant's motion for summary judgment (Doc. 18) is denied;

3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: January 16, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE